IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 3:13-CV-92

| | |
|---|---|
| **LILY'S LOVING ARMS, LLC ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**QUINTESSENTIAL TOTS, LLC ,**<br><br>**Defendant.** | **ANSWER AND COUNTERCLAIMS** |

## ANSWER

Defendant Quintessential Tots, LLC ("QT"), answers the correspondingly numbered paragraphs of the Complaint as follows:

## THE PARTIES

1. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 1, and, therefore, denies them.

2. QT admits the allegations of Paragraph 2.

## JURISDICTION AND VENUE

3. QT admits that the Court has subject matter jurisdiction over patent cases under 28 U.S.C. §§ 1331 and 1338(a). QT denies the remaining allegations of Paragraph 3.

4. QT will not contest personal jurisdiction, but otherwise denies the allegations of Paragraph 4.

5. QT will not contest venue, but otherwise denies the allegations of Paragraph 5.

## FACTUAL BACKGROUND

6. QT admits that Plaintiff appears to have attached a copy of U.S. Design Patent D667,241 to the Complaint as Exhibit A, which patent describes Lillian Winnail as the inventor.

QT denies the remaining allegations of Paragraph 6.

7. QT admits that the item depicted in the ‘241 design patent appears to be a cushion. QT denies the remaining allegations of Paragraph 7.

8. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 8, and, therefore, denies same.

9. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 9, and, therefore, denies same.

10. QT denies the allegations of Paragraph 10.

11. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 11, and, therefore, denies same.

12. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 12, and, therefore, denies same.

13. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 13, and, therefore, denies same.

14. QT admits that it sells car seat handle cushions. QT denies the remaining allegations of Paragraph 14.

15. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 15, and, therefore, denies same.

16. QT denies the allegations of Paragraph 16.

17. QT denies the allegations of Paragraph 17.

18. QT is without sufficient knowledge or information to admit or deny the allegations of Paragraph 18, and, therefore, denies same.

19. QT admits that it received a letter dated October 12, 2012, but denies the

remaining allegations of Paragraph 19.

20. QT admits the allegations of Paragraph 20.

21. QT admits that it received a letter dated November 19, 2012 from Plaintiff's counsel requesting "documentation" supporting invalidity. QT denies the remaining allegations of Paragraph 21. By way of further answer, and as set forth in more detail below, QT notes that the invalidating prior art sales are Plaintiff's own sales, of which Plaintiff presumably has its own documentation.

22. QT denies the allegations of Paragraph 22.

23. QT denies the allegations of Paragraph 23.

**FIRST CAUSE OF ACTION**

**(Design Patent Infringement 35 U.S.C. § 271)**

24. QT denies the allegations of Paragraph 24.

25. QT denies the allegations of Paragraph 25.

26. QT denies the allegations of Paragraph 26.

27. QT denies the allegations of Paragraph 27.

**SECOND CAUSE OF ACTION**

**(Trade Dress Infringement 15 U.S.C. § 1125(a))**

28. QT realleges its answers to the preceding Paragraphs as if restated verbatim.

29. QT denies the allegations of Paragraph 29.

30. QT denies the allegations of Paragraph 30.

31. QT denies the allegations of Paragraph 31.

32. QT denies the allegations of Paragraph 32.

33. QT denies the allegations of Paragraph 33.

34. QT denies the allegations of Paragraph 34.

35. QT denies the allegations of Paragraph 35.

**THIRD CAUSE OF ACTION**

**(Unfair and Deceptive Trade Practices N.C. Gen. Stat. § 75-1.1)**

36. QT realleges its answers to the preceding Paragraphs as if restated verbatim.

37. Paragraph 37 calls for a legal conclusion that requires no response.

38. QT denies the allegations of Paragraph 38.

39. QT denies the allegations of Paragraph 39.

40. QT denies the allegations of Paragraph 40.

**QT'S DEFENSES AND COUNTERCLAIMS**

For its Counterclaims against Lily's Loving Arms, LLC, QT allege as follows:

1. QT is a limited liability company organized and existing under the laws of the State of Illinois, with an office and principal place of business located at 1665 Quincy Avenue, Unit 179, Naperville, Illinois 60540.

2. Upon information and belief, Plaintiff Lily's Loving Arms, LLC ("Lily's") is a limited liability company organized and existing under the laws of the State of North Carolina, with a principal place of business in Mecklenburg County, North Carolina.

3. As a result of the allegations of infringement brought by it against QT, Lily's has submitted itself to this Court's jurisdiction by alleging, in the present lawsuit, that QT infringes the '241 design patent.

4. QT's counterclaims arise under the United States Patent Laws, Title 35 of the United States Code, and the provisions for declaratory judgment under §§ 2201-2202 of Title 28 of the United States Code. This Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338(a) and 28 U.S.C. § 1407.

5. An actual and ripe controversy exists of sufficient immediacy to warrant declaratory relief. QT is therefore entitled to a finding that it does not infringe the '241 design patent, that the '241 design patent is invalid, and further that the '241 design patent is unenforceable due to the commission of inequitable conduct during the filing and prosecution of the '241 patent.

6. Venue for these counterclaims is proper in this judicial district under 28 U.S.C. § 1407.

## COUNTERCLAIM COUNT I

**(Declaratory Judgment of Unenforceability of the**

**'241 Design Patent due to Inequitable Conduct)**

7. QT realleges the preceding paragraphs as if set forth herein verbatim.

8. The '241 design patent issued from U.S. Patent Application S/N 29/345,936 ("the '936 application"), which was filed on October 23, 2009.

9. Lillian Winnail is the sole inventor identified on the '241 design patent.

10. Alleged inventor Lillian Winnail is a co-owner of Lily's.

11. Shaun Winnail is a co-owner of Lily's.

12. Lily's and alleged inventor Winnail repeatedly argued to the United States Patent and Trademark Office ("PTO") during prosecution of the '936 application, specifically in order to obtain issuance of the '241 patent, that the tabs on the ends of the handle cushion shown in the figures of the '936 application serve a specific function, namely to produce "an evenly circular shape when the tabs meet." (Exh. 1, 10/8/10 Amendment and Response to Office Action, at 7.)

13. To support their arguments that the design of the handle cushion shown in the figure of the '936 application is patentable, Lily's, alleged inventor Ms. Winnail, and counsel for both, argued to the PTO, *inter alia*, that: "The Applicant's tight edges enhance the circular shape that is aesthetically desirable even if the cushion rolls around the handle." (Exh. 1, 10/8/10 Amendment and Response to Office Action, at 7.) "The Applicant further emphasizes that the tighter edges near the Applicant's tabs allow for the handle cushion to be consistently circular with a uniform look all the way around a handle…. [Thus,] Applicant's design avoids these unappealing features at the attachment point of the circular shape installation [in the prior art] and provides a more uniform appearance all the way around." (Exh. 2, Applicant's Appeal Brief Under 37 C.F.R. § 41.37, at 7.)

14. Counsel for Lily's in the present lawsuit, who also prosecuted the '936 application on behalf of Lily's and Ms. Winnail, confirmed the functional nature of the tabs in correspondence with QT's counsel after the lawsuit was filed.

15. Because the tabs shown in the figures of the '936 application and the '241 patent are functional, rather than ornamental, those tabs are not part of the design that is claimed in the '241 patent and cannot be considered for purposes of validity and/or infringement.

16. During prosecution of the '936 application, Lily's, alleged inventor Lillian Winnail, Shaun Winnail, counsel for both Lily's and Ms. Winnail, and others associated with the filing and prosecution of the '936 application knew or should have known that, pursuant to 37 C.F.R. § 1.56, each of them was under a duty of candor and good faith in dealing with the PTO, which included a duty to disclose to the PTO all information known to any of them to be material to the patentability, or lack thereof, of the design claimed in the '936 application.

17. In connection with the preparation and prosecution of the '936 application, alleged inventor Lillian Winnail signed a declaration pursuant to 18 U.S.C. § 1001, in which she attested to, *inter alia*, her awareness of her duty of good faith and candor before the PTO and the requirements of 37 C.F.R. § 1.56. (*See* Exh. 3.)

18. Pursuant to 37 C.F.R. § 1.56(b), information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) it establishes by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) it refutes, or is inconsistent with, a position the applicant takes in (i) opposing an argument of unpatentability relied on by the PTO, or (ii) asserting an argument of patentability.

19. At least Lily's, alleged inventor Lillian Winnail, Lily's co-owner Shaun Winnail,

and counsel for both Lily's and Ms. Winnail, asserted that the design disclosed and claimed in the '936 application was patentable. For example, Ms. Winnail stated, in the application filed by counsel for Lily's and Ms. Winnail, that "I, Lillian Winnail, have invented a new, original, and ornamental design for a handle cushion, or the like…." (Exh. 4, at 1 ("Preamble").)

20. At least Lily's, alleged inventor Lillian Winnail, Lily's co-owner Shaun Winnail, and counsel for both Lily's and Ms. Winnail knew that the non-functional portion of the design disclosed in the '936 application was neither new nor original, insofar as Ms. Winnail and Lily's had publicly disclosed, offered for sale, and sold a product comprising the exact non-functional portion of the design disclosed in the '936 application for several years prior to the date on which the '936 application was filed, in violation of at least the "public use" and "on sale" bars set forth in 35 U.S.C. § 102(b).

21. Beginning at least as early as October 1, 2007, Lily's sold a handle cushion under the mark "Lilypod," which embodied all of the ornamental and non-ornamental features of the design claimed in the '936 application.

22. A previously used example of the Lilypod handle cushion is shown in the following photographs, which are aligned with the corresponding figures from the '241 design patent:

| Lilypod | '241 design patent |
|---|---|
|  |  fig. 1. |
|  |  fig. 2.  fig. 6. |

| Lilypod | '241 design patent |
|---|---|
|  |  Fig. 3.  Fig. 7. |
|  |  Fig. 4.  Fig. 5. |
|  |  Fig. 8. |

23. The Lilypod handle cushion shown in the photographs is exemplary of the Lilypod handle cushion that Lily's sold, offered for sale, and publicly disclosed beginning at

least as early as October 1, 2007.

24. As shown in the photographs of an exemplary Lilypod product shown above, the Lilypod handle cushion that Lily's sold, offered for sale, and publicly disclosed at least as early as October 1, 2007 embodied all of the ornamental and non-ornamental features of the design claimed in the '936 application.

25. On October 1, 2007 – more than a year before the '241 design patent's critical date of October 23, 2008 – the Lilypod was publicly disclosed on the Internet, with the following photographs, and the comment "What a unique gift! It's called a Lilypod. My flight attendant girlfriend Lily started this company, so check it out at www.thelilypod.com":




MONDAY, OCTOBER 1, 2007

Girly Weekend



What a unique gift! It's called a Lilypod. My flight attendant girlfriend Lily started this company, so check it out at www.thelilypod.com.

The whole group at the shower. Back row: Karen, Me, Heather, Kelly. Front row: Mandy, Michelle, Shelly
What a fun weekend! Two of my girlfriends came in town to stay with us. Kelly came from Charlotte on Friday night, and Michelle came from Knoxville on Saturday morning. We went to tailgate at The Coop, Michelle and Kelly went into the game, we went out for dinner with other friends who live in town on Saturday night and we gave Michelle a baby shower on Sunday. It was a weekend packed full of fun and lots of laughs!!




POSTED BY THE BIRDS NEST AT 10/01/2007 10 COMMENTS:

(*See* http://thebirdsellnest.blogspot.com/search?updated-max=2007-10-24T03:36:00-04:00&max-results=7&start=124&by-date=false.) Thus, Lily's offered for sale and sold the Lilypod handle cushion prior to October 1, 2007, which is more than two years before Lily's and Ms. Winnail filed the '936 application, and more than one year before the '241 design patent's critical date.

26. Based on the publicly-available photographs shown above, which were posted on the Internet on October 1, 2007, Lily's Lilypod handle cushion, which entails all ornamental and non-ornamental features of the design claimed in the '936 application and the '241 design patent, was publicly disclosed more than two years before Lily's and Ms. Winnail filed the '936

application.

27. On information and belief, alleged inventor Lilian Winnail commented on these pictures on May 4, 2008: “Leigh Ann! I miss you! Thank you for plugging the LilyPods - your post actually comes up on Google! Are you coming to Charlotte anytime soon?? Take care, Lily.”


Blogger

Post a Comment On: The Birds' Nest

"Girly Weekend"

10 Comments - Show Original Post

Collapse comments

Anonymous said...

Leigh Ann! I miss you! Thank you for plugging the LilyPods - your post actually comes up on Google! Are you coming to Charlotte anytime soon?? Take care, Lily

May 4, 2008 at 9:51 AM

(*See* http://www.blogger.com/comment.g?blogID=8589894558695181609&postID =1040333112025987841.)

28. Thus, on information and belief, by at least as early as May 4, 2008, at least Ms. Winnail was aware of these pre-critical date sales, offers for sale and public disclosures of the Lilypod handle cushion, which embodies all ornamental and non-ornamental features of the design claimed in the ‘936 application and the ‘241 design patent, and Ms. Winnail was clearly pleased that these pictures and acknowledgements were part of the search results on Google, thereby further publicly promoting and disclosing Lily’s Lilypod handle cushion.

29. At least as early as December 3, 2007, Lily’s was offering Lilypod handle cushions for sale through on-line retailer “Mom4Life”:


REPLY

Tanja Knutson December 3, 2007 at 4:18 pm 235

Great deal this week on LilyPods! Those cute arm cusions for infant car seat handles!

http://www.mom4life.com/catalog.php?item=1246

REPLY

Jenn December 3, 2007 at 5:05 pm 236

I already have a 3 yr old but I need something to give my sister when she has her

(See www.5minutesformom.com/2649/nest/.[1]) On information and belief, at least Lily's and its co-owners, Mr. and Ms. Winnail, were aware that the sole product being sold by Lily's at that time – *i.e.*, the Lilypod handle cushion – was being promoted on this popular website.

30. On information and belief, at least as early as December 14, 2007, 10 months before the '241 design patent's critical date, Lily's and Ms. Winnail were publicly disclosing and offering for sale Lilypod handle cushions, including through Internet postings such as the following:

2007 Favorite Celebrity Pregnancies: New Mom #8 – Moms & Babies – Moms & Babies - People.com


GET 4 FREE ISSUES! CLICK HERE OR GIVE THE GIFT OF PEOPLE CLICK HERE

People

Follow 4.7M Go

HOME NEWS PHOTOS STYLE RED CARPET ROYALS TV WATCH BABIES PETS YOUR TURN CELEBS VIDEO MAGAZINE

Get 4 FREE Issues of PEOPLE News Photos Celeb Style Deals & Gear Great Ideas Giveaways

Top Stories It's a Girl for Jenna Bush Hager Matt and Luciana Damon Renew Their Vows Elsa Pataky: I Hate to Dress India In Pink

Moms&Babies Celebrity Baby Blog

ADVERTISEMENT

## 2007 Favorite Celebrity Pregnancies: New Mom #8

12/12/2007 AT 09:00 AM ET

[1] The internal webpage at www.mom4life.com/catalog.php?item=1246 is no longer available.

**Comments**

Showing 1 comments

**Lily Winnail** on December 14th, 2007

I love keeping tabs on celebrity pregnancies, and coming across this blog has been great. After the birth of my own little guy 9 months ago, I created a baby product that has blossomed into thriving business. The LilyPod was born out of my own desperate need for it! I was looking for a stylish, fun, comfortable way to carry around his infant car seat… and ended up inventing it myself. I'd love to send them as gifts to celebrities… but don't even know if they would ever actually receive them? Any ideas? Now that it's patented and trademarked, I think it will really catch on with new mom(and dads) everywhere!
Thanks for your help!

(*See* http://celebritybabies.people.com/2007/12/12/2007-favorite-2/.) In this public posting, it was Ms. Winnail herself, on information and belief, who publicly stated: "I love keeping tabs on celebrity pregnancies, and coming across this blog has been great. After the birth of my own little guy 9 months ago, I created a baby product that has blossomed into [a] thriving business. The LilyPod was born out of my own desperate need for it! I was looking for a stylish, fun, comfortable way to carry around his infant car seat… and ended up inventing it myself. I'd love to send them as gifts to celebrities… but don't even know if they would ever actually receive them? Any ideas? Now that it's patented and trademarked, I think it will really catch on with new mom (and dads) everywhere! Thanks for your help!" (*See id.* (emphasis added).)

31. Despite the claim by, on information and belief, Ms. Winnail that Lily's Lilypod handle cushions were both "[n]ow … patented and trademarked" as of December 14, 2007, the '936 application would not be filed for almost two years, and the '241 design patent would not issue for almost five years. Moreover, although Ms. Winnail filed an application to register the mark "Lilypod and Design" on July 25, 2007, the publicly available records of the PTO show that she abandoned that application on December 18, 2008, (*see* Exh. 5), and that Lily's never registered the Lilypod mark in any form.

32. Thus, at least as early as December 14, 2007, Ms. Winnail, on information and belief, was attempting to mislead the public into believing that Lily's Lilypod handle cushion, which embodies all ornamental and non-ornamental features of the design disclosed in the '936 application, was protected by both patent and trademark law, although neither claim was true at that time.

33. Lily's publicly disclosed Lilypod handle cushions on its own website, www.thelilypod.com, at least as early as February 6, 2008, which was more than eight months before the '241 design patent's critical date of October 23, 2008:




(*See* http://www.screenshots.com/thelilypod.com/2008-02-26.) Thus, Lily's publicly disclosed a product that comprises all of the ornamental and non-ornamental features of the design claimed

in the '936 application and the '241 design patent substantially more than one year prior to the date that Lily's filed the '936 patent application.

34. Lily's Lilypod handle cushions were described by members of the public who had purchased and publicly disclosed the handle cushions as early as January 15 and February 24, 2008:

Car-Seat.org
10th Anniversary • 2001-2011

Forums Home | Search | Carseat Blog | Carseat Basics | FAQ | Store | Click to Shop Amazon.com & Support Us

01-15-2008, 04:22 PM #9

housefairy
Guest

Posts: n/a

**Re: carrying car seat & back problems**

As a chronic back pain sufferer, I have learned over the years to carry things as close to my center of gravity as possible, like o_mom describes in her post "high, in front and close to the body". With infant car seats, the only way to do this is by putting the handle over the crook of your arm and bringing it way in and up high, like at chest level with your arm. Baby then is at waist level. You can't carry baby for any length of time like this (or at least my biceps can't!!), but it works for those short hauls. I found this cute little handle cushion called the LilyPod, which helps avoid the handle from digging into your arm when you have to carry the baby this way. I still have to spend a small fortune on chiropractic bills, but I have found I have fewer flare-ups than before when I used to carry the seat like a briefcase. Hope this helps! It know it's no fun at all to be in pain!

Quote

02-24-2008, 02:27 PM #13

queenmum
Registered User

Join Date: Jan 2008
Posts: 4

**Re: carrying car seat & back problems**

I am happy to report some moderate improvements in my back pain...thanks to the suggestions of a few posters. I finally ordered a LilyPod handle pad, and it really has helped me to carry the car seat up high and close to my body, in the crook of my arm. My bicep and forearm actually get tired before my back does, which is an improvement for me, since I was getting sharp spasms in my mid back (along the ribs) before this. I use my stroller or sling whenever possible, but for those quick in-and-out trips in the car, this has really helped. The hardest part with the LilyPod was choosing just one design. I had no idea they were so fun! Just wanted to say thanks for the tip.

Quote

(*See* http://www.car-seat.org/showthread.php?t=32871 (emphases added).) These public discussions provide even further evidence of offers for sale and actual sales by Lily's of its Lilypod handle cushions long before the '241 design patent's critical date of October 23, 2008.

Moreover, on information and belief, at least Lily's, alleged inventor Lillian Winnail and Lily's co-owner Shaun Winnail, were aware of these publicly available disclosures and promotions of the Lilypod handle cushion.

35. Lily's Lilypod handle cushions were also featured on the popular "5 Minutes for Mom" website at least as early as May 22, 2008, where it was characterized as being subject to a pending patent application, even though the '936 application was not filed until approximately 17 months after this public disclosure of Lily's Lilypod handle cushion:









(*See* http//www.5minutesformom.com/mom-owned-stores/gifts-children/230/thelilypod/.) This provides additional evidence of pre-critical date public disclosures and offers for sale by Lily's. On information and belief, at least Lily's and its co-owners, Mr. and Ms. Winnail, were aware of these public disclosures and promotions of a product being offered for sale by Lily's.

36. Lily's changed the name of its product to "Padalily" on or about February 3, 2009:

| Lilypod | Padalily | '241 design patent |
|---|---|---|
|  |  |  Fig. 1. |

| Lilypod | Padalily | '241 design patent |
|---|---|---|
|  |  |  Fig. 8. |

37. At no time during the prosecution of the '936 application was either the Lilypod handle cushion itself, or any information regarding pre-critical date offers for sale, sales and/or public disclosures of the Lilypod handle cushion, including without limitation the information set forth above in paragraphs 21-36 cumulative to information already of record or being made of record in the '936 application.

38. The Lilypod handle cushion itself, as well as information regarding pre-critical date offers for sale, sales and/or public disclosures of the Lilypod handle cushion, including without limitation the information set forth above in paragraphs 21-36, whether standing alone or in any combination, establishes a prima facie case of unpatentability of the design claimed in the '936 application.

39. The Lilypod handle cushion itself, as well as information regarding pre-critical date offers for sale, sales and/or public disclosures of the Lilypod handle cushion, including without limitation the information set forth above in paragraphs 21-36 refute, or at least are inconsistent with, positions taken by Lily's, alleged inventor Ms. Winnail, and/or counsel for Lily's and Ms. Winnail in (i) opposing an argument of unpatentability relied on by the PTO, or (ii) asserting an argument of patentability.

40. The Lilypod handle cushion itself, as well as information regarding pre-critical

date offers for sale, sales and/or public disclosures of the Lilypod handle cushion, including without limitation the information set forth above in paragraphs 21-36 are material to patentability and, therefore, pursuant to their duty of candor and fair dealing under 37 C.F.R. § 1.56, each of Lily's, alleged inventor Lillian Winnail, co-owner of Lily's Shaun Winnail, counsel for Lily's and Ms. Winnail, and others associated with the filing and prosecution of the '936 application should have submitted it to the PTO during prosecution of the '936 application.

41. Counsel for Ms. Winnail and Lily's submitted a single Information Disclosure Statement ("IDS") to the PTO during prosecution of the '936 application, in which four United States patents were identified. (Exh. 6.)

42. The IDS submitted by counsel for Ms. Winnail and Lily's did not identify either the Lilypod handle cushion itself or any information regarding pre-critical date offers for sale, sales and/or public disclosures of Lily's Lilypod handle cushion, including without limitation the information set forth above in paragraphs 21-36.

43. None of Lily's, alleged inventor Lillian Winnail, co-owner of Lily's Shaun Winnail, counsel for Lily's and Ms. Winnail, and/or anyone else associated with the filing and prosecution of the '936 application ever submitted to the PTO during prosecution of the '936 patent either a Lilypod handle cushion or any information regarding pre-critical date offers for sale, sales and/or public disclosures of the Lilypod handle cushion, including without limitation the information set forth above in paragraphs 21-36, *supra*, despite the fact that at least Lily's, Ms. Winnail, and Mr. Winnail knew that Lily's had sold, offered for sale, and publicly disclosed the Lilypod handle cushion beginning at least as early as October 1, 2007.

44. The conduct described herein constitutes inequitable conduct, rendering the '241 design patent unenforceable.

## COUNTERCLAIM COUNT II

**(Declaratory Judgment of Invalidity of the '241 Design Patent)**

45. QT realleges the preceding paragraphs as if set forth herein verbatim.

46. The '241 design patent is invalid for failure to meet the conditions of patentability and/or otherwise, by failing to comply with the requirements set forth in 35 U.S.C. §§ 102 and/or 103, as well as by failing to comply with 35 U.S.C. § 112, by failing to point out and distinctly claim the alleged invention.

47. For example, and without limitation, each and every one of the pre-critical date offers for sale, sales, and public disclosures within the United States described above in paragraphs 21-36 constitutes an independent invalidating event pursuant to 35 U.S.C. § 102.

48. The Lilypod handle cushion, alone or in combination with information regarding pre-critical date offers for sale, sales and/or public disclosures of the Lilypod handle cushion, as well as other prior art, including without limitation the information set forth above in paragraphs 21-36, renders the '241 patent invalid as obvious, pursuant to 35 U.S.C. § 103.

49. An actual controversy exists between QT and Lily's regarding the alleged validity of the '241 design patent, which controversy is ripe for resolution.

50. The Court should grant QT a declaratory judgment that the '241 design patent is invalid for failing to comply with the requirements of 35 U.S.C. §§ 102, 103 and/or 112.

## COUNTERCLAIM COUNT III

**(Declaratory Judgment of Non-infringement of the '241 Design Patent)**

51. QT realleges the preceding paragraphs as if set forth herein verbatim.

52. Plaintiff has asserted that QT infringes the '241 design patent.

53. QT has not infringed and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, the '241 design patent.

54. An actual controversy exists between QT and Lily's regarding the alleged infringement of the '241 design patent, which controversy is ripe for resolution.

55. The Court should grant QT a declaratory judgment that QT has not infringed, and does not infringe, either directly or indirectly, literally or under the doctrine of equivalents, the '241 design patent.

**PRAYER FOR RELIEF**

WHEREFORE, QT requests the following judgment and relief:

a. A judicial declaration that U.S. Patent No. D667,241 is unenforceable based on inequitable conduct, is not infringed, and is invalid;

b. A judicial declaration that QT is the prevailing party, and that this is an exceptional case in view of the egregious inequitable conduct committed by at least Lily's, alleged inventor Lillian Winnail, co-owner of Lily's Shaun Winnail, and counsel for Lily's and Lillian Winnail, and awarding QT its costs, expenses, disbursements, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

c. Dismissing or denying all claims set forth in Lily's Complaint;

c. Ordering that Lily's pay all costs associated with this action; and

d. Awarding such other costs and further relief as the Court may deem just and proper.

**JURY DEMAND**

A jury trial is demanded on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

This 15th day of April, 2013.


s/ Charles E. Johnson

Charles E. Johnson
N.C. Bar No. 9890
cejohnson@rbh.com

Sinéad N. O'Doherty
N.C. Bar No. 38402
sodoherty@rbh.com

ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

OF COUNSEL:

Kevin J. O'Shea
osheak@gtlaw.com

GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-1025
Facsimile: (312) 899-0385

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2013, I electronically filed the foregoing **ANSWER AND COUNTERCLAIMS** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties.

John C. Nipp (N.C. Bar No. 23406)
jnipp@summalaw.com

SUMMA, ADDITON & ASHE, P.A.
11610 N. Community House Rd., Suite 200
Charlotte, NC 28277
Tel: 704-945-6710
Fax: 704-945-6735

*Attorney for Plaintiff*

s/ Charles E. Johnson